## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JOE CRANFORD,

        Plaintiff,

    - against -

SMITH & WESSON HOLDING CORP., BARRY M.
MONHEIT, JEFFREY D. BUCHANAN, JOHN B.
FURMAN, COLTON R. MELBY, MITCHELL A.
SALTZ, ROBERT L. SCOTT, DAVID M. STONE, I.
MARIE WADECKI, MICHAEL F. GOLDEN, JOHN
A. KELLY, KENNETH W. CHANDLER, ANN B.
MAKKIYA, LELAND A. NICHOLS, and THOMAS
L. TAYLOR,

        Defendants.

C.A. No.

## COMPLAINT

Plaintiff, Joe Cranford, on behalf of himself and a Class (defined below) comprised of all other persons similarly situated, alleges upon the investigation made by and through his counsel, which includes, *inter alia*, a review of relevant public filings made by Smith & Wesson Holding Corp. ("SWHC" or the "Company") with the Securities and Exchange Commission ("SEC"), as well as teleconferences, press releases, news articles, analysts' reports, and media reports concerning the Company. This Complaint is based upon plaintiff's personal knowledge as to his own acts, and upon information and belief as to all other matters, based upon the aforementioned investigation.

## NATURE OF THE ACTION

1.     This is a class action on behalf of all persons, other than defendants, who purchased SWHC securities between June 15, 2007, and December 6, 2007, inclusive (the "Class Period"), to recover damages caused by defendants' violations of the federal securities law.

During the Class Period, defendants issued to the investing public false and misleading financial statements and press releases concerning the Company's publicly reported revenues, earnings, business operations and prospects, and true state of internal controls over financial reporting.

2.      On December 6, 2007, after the market closed, SWHC issued a press release announcing its quarterly earnings for the quarter ending October 31, 2007.  The Company cut its quarterly and yearly fiscal 2008 profit forecast.  In addition, the Company disclosed that it was experiencing "softness in the market for hunting rifles driven by lower than expected consumer demand and an industry wide build up of pre-season inventories."

3.      These disclosures, which contradicted most of what defendants told the investing public about the Company's financial performance during the Class Period, caused the Company's stock to drop 68% from $21.85 on October 18, 2007, to $7.08 per share on December 7, 2007, the first day after the end of the Class Period.

4.      As detailed below, SWHC insiders, however, faired far better than public stockholders.  Indeed, during the Class Period, while in possession of material, non-public information, defendants garnered over $33.7 million from trading in Company securities.

## PARTIES

5.      Plaintiff purchased the Company's securities as set forth more fully in the annexed certificate, and suffered economic damages.

6.      SWHC is a Nevada corporation with its principal place of business at 2100 Roosevelt Avenue, Springfield, Massachusetts.  At all relevant times, the Company's securities traded in an orderly and efficient market on the NASDAQ.

**Directors:**

7.      Defendant Barry M. Monheit ("Monheit") served as SWHC's Chairman of the Board during the Class Period.  Mr. Monheit has served as a director of the Company since

February 2004.  During the Class Period Mr. Monheit reaped approximately $6,000,000 in profit from trading in SWHC securities.

8.      Defendant Jeffrey D. Buchanan ("Buchanan") has served as a director of SWHC since November 2004.

9.      Defendant John B. Furman ("Furman") has served as a director of SWHC since April 2004.

10.     Defendant Colton R. Melby ("Melby") has served as a director of SWHC since May 2001.  During the Class Period Mr. Melby reaped over $12,000,000 in profit from trading in SWHC securities.

11.     Defendant Mitchell A. Saltz ("Saltz") has served as a director of SWHC since October 1998.  During the Class Period Mr. Saltz reaped approximately $12,500,000 in profit from trading in SWHC securities.

12.     Defendant Robert L. Scott ("Scott") has served as a director of SWHC since December 1999.

13.     Defendant David M. Stone ("Stone") has served as a director of SWHC since September 2006.

14.     Defendant I. Marie Wadecki ("Wadecki") has served as a director of SWHC since September 2002.

**Officers:**

15.     Defendant Michael F. Golden ("Golden") has served as the President and Chief Executive Officer and a director of SWHC since December 2004.  During the Class Period Mr. Golden reaped nearly $200,000 in profit from trading in SWHC securities.

16.     Defendant John A. Kelly ("Kelly") has served as Chief Financial Officer of SWHC since February 2004.  During the Class Period Mr. Kelly reaped nearly $50,000 in profit from trading in SWHC securities.

17.     Defendant Kenneth W. Chandler ("Chandler") has served as the Vice President of Operations of SWHC since November 2004.  During the Class Period Mr. Chandler reaped over $1,000,000 in profits from trading in SWHC securities.

18.     Defendant Ann B. Makkiya ("Mikkiya") has served Corporate Counsel and Secretary of SWHC since February 2004.  During the Class Period Ms. Makkiya reaped over $215,000 in profit from trading in SWHC securities.

19.     Defendant Leland A. Nichols ("Nichols") has served as Chief Operating Officer of Smith & Wesson Corp. since January 2005.  During the Class Period Mr. Nichols reaped approximately $100,000 from trading in SWHC securities.

20.     Defendant Thomas L. Taylor ("Taylor") has served as the Vice President of Marketing of SWHC since July 2004.  During the Class Period Mr. Taylor reaped over $1,500,000 in profit from trading in SWHC securities.

21.     Defendants Monheit, Buchanan, Furman, Melby, Saltz, Scott, Stone, Wadecki, Golden, Kelly, Chandler, Mikkiya, Nichols, and Taylor, are sometimes referred to herein as the "Individual Defendants."  Because of the Individual Defendants' positions as directors or senior officers of the Company, each had access to the material adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance

497611                                             4

at management and/or Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

22.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.  Each of them, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein.  Each was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, was aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

23.     As officers and controlling persons of a publicly held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, was traded on the Nasdaq National Market System ("NASDAQ"), and is governed by the provisions of the federal securities laws, each defendant had a duty to disseminate timely, accurate, and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that became materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information.  The Individual Defendants

misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

24.     The Individual Defendants participated in the drafting, preparation, or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.  Because of their Board membership or executive and managerial positions with SWHC, each of the Individual Defendants had access to the adverse undisclosed information about the Company's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations, made by or about SWHC and its business, issued or adopted by the Company, materially false and misleading.

25.     The Individual Defendants, because of their positions of control and authority as officers or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.

26.     Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases alleged herein, and is therefore primarily liable for the representations contained therein.

27.     Each of the defendants is also liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of SWHC securities by disseminating materially false and misleading statements and/or concealing material adverse

facts.  The scheme (a) deceived the investing public regarding the Company's business, operations, and the intrinsic value of the Company's publicly traded securities, and (b) caused plaintiffs and other members of the Class to purchase SWHC's publicly traded securities and to do so at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of all those persons who purchased SWHC securities during the Class Period and who suffered damages thereby (the "Class").  Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

29.     The members of the Class are so numerous that joinder of all members is impracticable.  According to the Company's most recent quarterly financial statement filed with the SEC on Form 10-Q, on December 10, 2007, as of December 1, 2007, SWHC had 40,382,673 shares of common stock outstanding.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by defendants' acts as alleged herein;

b.     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and financial condition of the Company;

c.     whether defendants acted knowingly or recklessly in making materially false and misleading statements during the Class Period;

d.     whether the market prices of the Company's common stock was artificially inflated or distorted during the Class Period because of defendants' conduct complained of herein; and

e.     to what extent the members of the Class have sustained damages and the proper measure of damages.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

34.     SWHC through its subsidiary, Smith & Wesson Corp., manufactures handguns in the United States.  The Company produces firearms, including revolvers, black powder firearms, pistols, rifles, and handcuffs.  It also offers hunting and sporting apparel, hunting accessories, truck and automobile accessories, military footwear, leather apparel and accessories, and gun cleaning products.

35.     On June 14, 2007, after the market closed, SWHC issued a press release announcing its financial results for the fourth quarter and full year of fiscal 2007, including a forecast for the third quarter of 2007, the period ended April 30, 2007.  The Company reported record quarterly revenues of $82.6 million and record annual revenues of $234.8 million.  The Company also reported net income of $13 million, and record earnings per share of $0.31. Defendant Monheit commented on the results as follows:

> Our results for fiscal 2007 reflect the tremendous execution of our business strategy by Mike Golden and his team. They have now delivered ten consecutive quarters of year-over-year, double digit sales growth in our core handgun business, and the recent acquisition of Thompson/Center, combined with the introduction of our new Smith & Wesson shotguns and bolt-action rifles, demonstrates that our diversification is successfully underway. The board of directors is excited with the progress this team has made, and we look forward to opportunities to build upon these successes in fiscal 2008

Defendant Golden also stated as follows:

> Fiscal 2007 was a year of exceptional progress toward establishing Smith & Wesson as a global supplier in the business of safety, security, protection and sport. Tremendous growth in our core handgun business was driven by a number of new products and our continuing penetration of existing and new markets, while our launch of new shotgun and rifle products reflected our ability to diversify both organically and through successful acquisitions.

> Our 48.8% increase in net product sales was driven by a number of initiatives. It has now been a full year since the implementation of

our sporting goods sales force comprised entirely of employees, rather than independent manufacturers' representatives. It has also been a full year of equipping our sporting goods sales force, as well as our law enforcement sales force, with the specially designed, M&P line of polymer pistols. The results have been impressive. Net product sales in the sporting goods channel grew 35.2% for fiscal 2007, apart from the Thompson/Center acquisition. Equally important, we continued to deliver growth each quarter beyond the anniversary date of the implementation of this sales force. Sporting goods sales increased 30% for the second half of fiscal 2007 compared with the comparable period of fiscal 2006 even though the all-employee sales force was in place during both periods.

The Company also provided guidance for fiscal 2008 stating as follows:

**We are raising our sales expectations for fiscal 2008 from $320 million to $330 million, which would represent a 40.5% increase over fiscal 2007 sales. This increased sales expectation includes growth in our existing sporting goods channel** and our continued penetration of the law enforcement and international markets. It also reflects a full fiscal year of impact from our Thompson/Center acquisition. The increased sales expectation does not include any significant revenue from federal government orders, nor does it include the results of any potential future diversification initiatives. The M&P pistol and tactical rifle series, along with our new shotgun and bolt-action rifle lines, are expected to be drivers in the sales increase for fiscal 2008.

**Net income for fiscal 2008 is anticipated to be $28.0 million, or $0.62 per diluted share, double the earnings per diluted share for fiscal 2007. Our increased expectation of $0.62 per diluted share in net income reflects an increase over our previously announced guidance of $0.60. This increase is expected to result from higher expected sales volume, improvement in gross margin percentage to between 35% and 36%, a decline in operating expenses as a percentage of sales and licensing, and a full fiscal year of impact from our** Thompson/Center acquisition. Because of the acquisition, the seasonality of the hunting segment will now be reflected in our quarterly results. Therefore, our first quarter (May through July) of fiscal 2008 will be our weakest quarter, while results in our second quarter (August through October), traditionally a strong quarter for hunting sales, will improve substantially over results for the second quarter of fiscal 2006. We began the year with a strong order backlog and as a result, we expect earnings for the first quarter of fiscal 2008 to now be $.09 per diluted share compared with $.08 per diluted share

for the first quarter of fiscal 2007 and expect that the subsequent quarters through fiscal 2008 will increase more significantly on a year-over- year basis. (Emphasis added)

36.     On this news the Company's stock climbed to 8% to $16.15 on over 4 million shares traded (nearly four times average trading volume during the Class Period).

37.     On July 16, 2007, the Company filed with the SEC its Form 10-K for the fiscal year 2007, which included the same financial results previously reported.  The Form 10-K also included a certification by defendant Golden, that stated:

I, Michael F. Golden, certify that:

1.      I have reviewed this annual report on Form 10-K of Smith & Wesson Holding Corporation;

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls

and procedures, as of the end of the period covered by this report based on such evaluation; and

d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's fourth fiscal quarter that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors:

a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

38.     Defendant Kelly, the Company's CFO, signed an identical certification that was also included in the Form 10-K.

39.     On September 6, 2007, after the market closed, SWHC issued a press release announcing its financial results for the first quarter of fiscal 2008, the period ending July 31, 2007.  The Company reported record quarterly revenues of $74.4 million and net income for the quarter of $4.7 million, or $0.11 per diluted share, compared with $3.4 million, or $.08 per diluted share, for the comparable quarter the previous year.  Defendant Golden commented on the results stating in pertinent part as follows:

> Our results for the first quarter of fiscal 2008 demonstrate progress across many initiatives and reflect growth in our core handgun business as well as our newly established long gun business. Our sales growth was particularly strong given that the comparable quarter of the prior year included $5.2 million in U.S. government orders for Afghanistan that were not duplicated in the current quarter. Handgun sales into the retail channel increased by 41.0% for the quarter, driven by our direct sales force and a number of ongoing retail initiatives. We continued to penetrate the law enforcement channel in the first quarter. Our Military & Police (M&P) polymer pistols have a cumulative win rate of over 80% in

all test and evaluation processes in which they have competed. The number of law enforcement agencies that have purchased or approved for carry our M&P pistol has now grown to 231, including recent wins at sizeable agencies such as the Hartford, Connecticut Police and the New Hampshire State Police.

40.     The Company also provided guidance for the upcoming quarter and for fiscal year 2008, stating in pertinent part as follows:

> **We continue to expect revenue to increase to approximately $330 million in fiscal 2008, which would represent a 40% increase over fiscal 2007 revenue.** This revenue expectation does not include the results of any potential future, diversification initiatives, but does include growth in our existing consumer market, as well as continued penetration of the law enforcement, federal government, and international markets. Sales of our M&P pistols, M&P tactical rifles, our new shotguns and both of our new lines of hunting rifles are all expected to be key drivers of the revenue increase for fiscal 2008. **We expect second quarter revenue to increase by approximately 60% over revenue in second quarter of fiscal 2007, driven by continued expansion in our existing markets and the addition of revenue from Thompson/Center.**
>
> **We are increasing our expectations for fiscal 2008 net income to approximately $28.5 million, or $0.63 per diluted share, which is higher than our earlier expectation of $28.0 million, or $0.62 per share. These results would represent an increase of 119% over net income for fiscal 2007.** While first quarter results were $0.02 per diluted share higher than our expectations, approximately one-half of this increase was due to timing on depreciation expense. Our capital expenditures for the first quarter were lower than anticipated, though we still expect to spend $17.7 million in fiscal 2008. We continue to expect gross margin improvement to the range of 35% to 36% for the full fiscal year, with second quarter gross margins of approximately 33%, reflecting the impact of the annual two week plant shutdown which occurs each August at our Springfield and Houlton facilities. The 33% gross margin reflects a 180 basis point increase over the second quarter of fiscal 2006. The seasonal nature of the hunting business will be reflected in higher marketing expenditures in the second quarter as a result of our increased advertising efforts during this peak buying period. We still expect operating expenses to be in the 20% to 21% range for the full fiscal year.  (Emphasis added)

41.     In response to the positive earnings announcement, the Company's stock price surged to $21.06 per share on over two million shares traded.

42.     On September 10, 2007, the Company filed with the SEC its Form 10-Q for the first quarter of 2008, which included the same financial results previously reported.  The Form 10-Q also included a certification by defendant Golden, that stated:

I, Michael F. Golden, certify that:

1.     I have reviewed this quarterly report on Form 10-Q of Smith & Wesson Holding Corporation;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's fourth fiscal quarter that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors:

a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

43.      Defendant Kelly, the Company's CFO, signed an identical certification that was also included in the Form 10-Q

44.      As a result of all the Company's positive statements, the Company's stock price continued to climb until it reached it's a high of $21.85 on October 18, 2007.  The price of $21.85 per share represents a 47% increase in the price of SWHC stock from June 14, 2007, the last day prior to the commencement of the Class Period in which the Company's stock price was a mere $14.91 per share.

45.      These statements were false and misleading when made because they failed to disclose and misrepresented the following material adverse facts, which were known to defendants or recklessly disregarded by them: (a) that the market for various lines of the Company's gun products was saturated with inventory; (b) that as a result of this increased inventory customers were reducing orders and postponing purchases; (c) that as a result of the foregoing, SWHC's sales did not represent true growth for the Company's product but were instead inventory stocking transactions that could not continue to indefinitely; and (d) that based

on the foregoing, defendants lacked a reasonable basis for their positive statements about the Company and its future prospects.

**The Truth Slowly Emerges**

46.     On October 29, 2007, after the market closed, SWHC issued a press release announcing its preliminary financial results for the second quarter of fiscal 2008, the period ending October 31, 2007.  Among other things the SWHC reduced its revenue and earnings guidance for fiscal 2008.  Specifically, the Company reduced revenue guidance to $325 million, down from the previously forecast $330, and reduced its earning guidance to $23.8 million ($0.53 per share), down from the previously forecast $28.5 million ($0.63 per share).  Defendant Golden commented in pertinent part as follows:

> While second quarter sales growth came in strong at 36% to 40%, our results were impacted by a combination of factors that emerged late in the quarter. Among these factors were softness in the market for hunting rifles and shotguns, driven by lower than expected consumer demand, a buildup of pre-season retail inventories, and unseasonably warm autumn weather, which decreased retail traffic and compressed the fall hunting season. Sales of our Thompson/Center Arms hunting rifles, which have a brand name that is already well-established in the consumer hunting market, appear to be far less impacted by these factors than are sales of new Smith & Wesson rifles and shotguns, which have only just begun to arrive in retail locations

47.     On this announcement the Company's stock plunged $7.97 (40%) from $20.09 to $12.12 on nearly 15 million shares traded (13 times the average daily trading volume during the Class Period).  Defendants, however, continued to conceal the truth about the Company, its operations, and its prospects.

48.     Finally, on December 6, 2007, after the market closed, the Company issued a press release announcing its financial results for the second quarter of fiscal 2008.  This time the Company revealed a more dismal outlook than previously reported.  Revenue forecast was

slashed to $300 million (down from the previously forecast $330 million) and net income forecast was reduced to $17 million or $0.40 per share (down from the previously forecast $28.5 million, or $0.63 per share).   Defendant Golden commented on the reduced expectations as follows:

> As we announced last month, our results for the second quarter of fiscal 2008 in the consumer channel were impacted by a combination of factors, including softness in the market for hunting rifles and shotguns driven by lower than expected consumer demand, an industry-wide buildup of pre-season retail inventories, and unseasonably warm autumn weather, which compressed the fall hunting season. Within the consumer channel, the reduced retail activity not only affected long guns but handguns as well, and was compounded by the fact that inventory in the channel was at an extremely high level, due in part to the anticipation of a strong hunting season. In fact, during the first six months of calendar 2007, federal excise tax data indicates that industry-wide long gun sales into the distribution channel increased 20% year-over-year and handgun sales increased 37% year-over-year. However, federal background check data, which is an indicator of retail purchases, reflects that retail purchases for the same period of time increased by only 5.2%. The resulting, industry-wide inventory buildup, accentuated by lower retail traffic, caused order activity to slow beginning in October. Several manufacturers responded with significant discounts on both long guns and handguns. This caused increased price competition in the channel and served to exacerbate already inflated inventory levels.

49.     On this announcement the Company's stock dropped an additional $2.84 (29%) to $7.08 per share, on over 12.5 million shares traded (11 times the average daily trading volume during the Class Period).

50.     As a result of the Company's misstatements during the Class Period, SWHC lost 68% of its market capitalization as the stock price plummeted from $21.85 on October 18, 2007, to $7.08 on December 7, 2007.

## **UNDISCLOSED MATERIAL, ADVERSE FACTS**

51.    The market for SWHC's common stock was open, well-developed, and efficient at all relevant times.

52.    As a result of these materially false and misleading statements and failures to disclose, SWHC's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired SWHC common stock relying upon the integrity of the market price of SWHC's common stock and market information relating to SWHC, and have been damaged thereby.

53.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of SWHC's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

54.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the stock purchases by Plaintiff and other members of the Class.

55.    Each defendant is liable for (i) making false statements, or (ii) failing to disclose adverse facts known to him about SWHC.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of SWHC common stock was a success, as it (i) deceived the investing public regarding SWHC's prospects and business; (ii) artificially inflated the prices of SWHC common stock; and (iii) caused plaintiff and other members of the Class to purchase SWHC common stock at inflated prices.

## SCIENTER ALLEGATIONS

56.     As alleged herein, defendants acted with scienter, in that they knew the Company's public documents and statements issued or disseminated by or in the name of the Company were materially false and misleading; they knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and they knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws.

57.     As alleged herein in detail, by virtue of their receipt of information reflecting the true facts regarding SWHC and its business practices, their control over or receipt of SWHC's materially false and misleading statements, or their associations with the Company which made them privy to confidential proprietary information concerning SWHC, defendants were active and culpable participants in the fraudulent scheme alleged herein.

58.     Defendants knew or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.

59.     The ongoing fraudulent scheme described in this complaint could not have been so pervasive without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

60.     In particular, the Individual Defendants engaged in such a scheme to inflate the price of SWHC securities in order reap huge benefits from trading in SWHC securities.  Indeed of the Company's 14 officers and directors 9 of them traded in SWHC securities during the Class Period.  As a result of their trades during the Class Period these nine Defendants reaped a benefit of approximately $33,707,965 or $3.7 million per person.

61.     As detailed in the chart below, Defendants took full advantage of their position as officers and directors of the Company to misinform the public while trading in SWHC stock at inflated prices:

| Name | Title | Date | Transaction | # of Shares | Price | Total |
|------|-------|------|-------------|-------------|-------|-------|
| Barry M. Monheit | Director | 9/13/2007 | Sell | -2,602 | $19.75 | $51,389.50 |
| | | 9/13/2007 | Sell | -4,000 | $19.76 | $79,040.00 |
| | | 9/13/2007 | Sell | -1,000 | $19.77 | $19,770.00 |
| | | 9/13/2007 | Sell | -600 | $19.78 | $11,868.00 |
| | | 9/13/2007 | Sell | -500 | $19.79 | $9,895.00 |
| | | 9/13/2007 | Sell | -155 | $19.80 | $3,069.00 |
| | | 9/13/2007 | Sell | -1,845 | $19.81 | $36,549.45 |
| | | 9/13/2007 | Sell | -700 | $19.82 | $13,874.00 |
| | | 9/13/2007 | Sell | -100 | $19.83 | $1,983.00 |
| | | 9/13/2007 | Sell | -1,300 | $19.84 | $25,792.00 |
| | | 9/13/2007 | Sell | -1,544 | $19.85 | $30,648.40 |
| | | 9/13/2007 | Sell | -1,000 | $19.86 | $19,860.00 |
| | | 9/13/2007 | Sell | -300 | $19.87 | $5,961.00 |
| | | 9/13/2007 | Sell | -1,000 | $19.89 | $19,890.00 |
| | | 9/13/2007 | Sell | -2,700 | $19.90 | $53,730.00 |
| | | 9/13/2007 | Sell | -1,400 | $19.92 | $27,888.00 |
| | | 9/13/2007 | Sell | -2,100 | $19.93 | $41,853.00 |
| | | 9/13/2007 | Sell | -2,924 | $19.94 | $58,304.56 |
| | | 9/13/2007 | Sell | -3,476 | $19.95 | $69,346.20 |
| | | 9/13/2007 | Sell | -2,100 | $19.96 | $41,916.00 |
| | | 9/13/2007 | Sell | -1,000 | $19.97 | $19,970.00 |
| | | 9/13/2007 | Sell | -1,500 | $19.98 | $29,970.00 |
| | | 9/13/2007 | Sell | -2,500 | $19.99 | $49,975.00 |
| | | 9/13/2007 | Sell | -2,000 | $20.00 | $40,000.00 |
| | | 9/13/2007 | Sell | -500 | $20.08 | $10,040.00 |
| | | 9/13/2007 | Sell | -800 | $20.09 | $16,072.00 |
| | | 9/13/2007 | Sell | -1,400 | $20.10 | $28,140.00 |
| | | 9/13/2007 | Sell | -800 | $20.21 | $16,168.00 |
| | | 9/13/2007 | Sell | -100 | $20.22 | $2,022.00 |
| | | 9/13/2007 | Sell | -100 | $20.25 | $2,025.00 |
| | | 9/14/2007 | Sell | -1,500 | $19.75 | $29,625.00 |
| | | 9/14/2007 | Sell | -800 | $19.76 | $15,808.00 |
| | | 9/18/2007 | Sell | -1,600 | $19.18 | $30,688.00 |
| | | 9/18/2007 | Sell | -10,600 | $19.19 | $203,414.00 |
| | | 9/18/2007 | Sell | -24,900 | $19.20 | $478,080.00 |
| | | 9/18/2007 | Sell | -23,990 | $19.21 | $460,847.90 |
| | | 9/18/2007 | Sell | -13,380 | $19.22 | $257,163.60 |
| | | 9/18/2007 | Sell | -9,079 | $19.23 | $174,589.17 |
| | | 9/18/2007 | Sell | -5,900 | $19.24 | $113,516.00 |
| | | 9/18/2007 | Sell | -2,000 | $19.25 | $38,500.00 |
| | | 9/18/2007 | Sell | -3,000 | $19.26 | $57,780.00 |

| Name | Title | Date | Transaction | # of Shares | Price | Total |
|------|-------|------|-------------|-------------|-------|-------|
| | | 9/18/2007 | Sell | -1,000 | $19.28 | $19,280.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.30 | $19,300.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.31 | $19,310.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.32 | $19,320.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.33 | $19,330.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.35 | $19,350.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.36 | $19,360.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.39 | $19,390.00 |
| | | 9/18/2007 | Sell | -2,400 | $19.43 | $46,632.00 |
| | | 9/18/2007 | Sell | -3,850 | $19.44 | $74,844.00 |
| | | 9/18/2007 | Sell | -7,950 | $19.45 | $154,627.50 |
| | | 9/18/2007 | Sell | -2,600 | $19.46 | $50,596.00 |
| | | 9/18/2007 | Sell | -1,900 | $19.47 | $36,993.00 |
| | | 9/18/2007 | Sell | -4,170 | $19.48 | $81,231.60 |
| | | 9/18/2007 | Sell | -6,838 | $19.49 | $133,272.62 |
| | | 9/18/2007 | Sell | -1,100 | $19.50 | $21,450.00 |
| | | 9/18/2007 | Sell | -4,000 | $19.51 | $78,040.00 |
| | | 9/18/2007 | Sell | -5,400 | $19.52 | $105,408.00 |
| | | 9/18/2007 | Sell | -4,200 | $19.53 | $82,026.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.54 | $19,540.00 |
| | | 9/18/2007 | Sell | -4,630 | $19.55 | $90,516.50 |
| | | 9/18/2007 | Sell | -6,600 | $19.56 | $129,096.00 |
| | | 9/18/2007 | Sell | -1,200 | $19.57 | $23,484.00 |
| | | 9/18/2007 | Sell | -2,000 | $19.58 | $39,160.00 |
| | | 9/18/2007 | Sell | -2,000 | $19.59 | $39,180.00 |
| | | 9/18/2007 | Sell | -4,000 | $19.61 | $78,440.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.62 | $19,620.00 |
| | | 9/18/2007 | Sell | -6,100 | $19.63 | $119,743.00 |
| | | 9/18/2007 | Sell | -2,400 | $19.64 | $47,136.00 |
| | | 9/18/2007 | Sell | -1,300 | $19.65 | $25,545.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.66 | $19,660.00 |
| | | 9/18/2007 | Sell | -2,000 | $19.67 | $39,340.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.68 | $19,680.00 |
| | | 9/18/2007 | Sell | -4,000 | $19.69 | $78,760.00 |
| | | 9/18/2007 | Sell | -7,369 | $19.70 | $145,169.30 |
| | | 9/18/2007 | Sell | -9,931 | $19.71 | $195,740.01 |
| | | 9/18/2007 | Sell | -10,221 | $19.72 | $201,558.12 |
| | | 9/18/2007 | Sell | -7,115 | $19.73 | $140,378.95 |
| | | 9/18/2007 | Sell | -7,699 | $19.74 | $151,978.26 |
| | | 9/18/2007 | Sell | -4,774 | $19.75 | $94,286.50 |
| | | 9/18/2007 | Sell | -2,000 | $19.76 | $39,520.00 |
| | | 9/18/2007 | Sell | -3,000 | $19.77 | $59,310.00 |
| | | 9/18/2007 | Sell | -3,700 | $19.78 | $73,186.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.79 | $19,790.00 |
| | | 9/18/2007 | Sell | -1,558 | $19.80 | $30,848.40 |
| | | 9/18/2007 | Sell | -1,000 | $19.81 | $19,810.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.84 | $19,840.00 |

| Name | Title | Date | Transaction | # of Shares | Price | Total |
|------|-------|------|-------------|-------------|-------|-------|
| | | 9/18/2007 | Sell | -1,000 | $19.85 | $19,850.00 |
| | | 9/18/2007 | Sell | -100 | $19.87 | $1,987.00 |
| | | 9/18/2007 | Sell | -1,000 | $19.88 | $19,880.00 |
| | | 9/18/2007 | Sell | -2,100 | $19.89 | $41,769.00 |
| | | 9/18/2007 | Sell | -2,000 | $19.90 | $39,800.00 |
| | | 9/18/2007 | Sell | -2,000 | $19.91 | $39,820.00 |
| | | | | -300,000 | | $5,860,203.54 |
| | | | | | | |
| Colton R. Melby | Director | 6/15/2007 | Sell | -100,000 | $16.00 | $1,600,000.00 |
| | | 6/15/2007 | Sell | -100,000 | $16.00 | $1,600,000.00 |
| | | 7/11/2007 | Sell | -88,216 | $17.50 | $1,543,780.00 |
| | | 7/12/2007 | Sell | -161,784 | $17.51 | $2,832,837.84 |
| | | 10/1/2007 | Sell | -45 | $18.35 | $825.75 |
| | | 10/1/2007 | Sell | -307 | $18.37 | $5,639.59 |
| | | 10/1/2007 | Sell | -8,200 | $18.38 | $150,716.00 |
| | | 10/1/2007 | Sell | -5,775 | $18.39 | $106,202.25 |
| | | 10/1/2007 | Sell | -4,666 | $18.40 | $85,854.40 |
| | | 10/1/2007 | Sell | -900 | $18.41 | $16,569.00 |
| | | 10/1/2007 | Sell | -800 | $18.42 | $14,736.00 |
| | | 10/1/2007 | Sell | -400 | $18.43 | $7,372.00 |
| | | 10/1/2007 | Sell | -200 | $18.44 | $3,688.00 |
| | | 10/1/2007 | Sell | -100 | $18.46 | $1,846.00 |
| | | 10/1/2007 | Sell | -1,766 | $18.47 | $32,618.02 |
| | | 10/1/2007 | Sell | -7,734 | $18.48 | $142,924.32 |
| | | 10/1/2007 | Sell | -500 | $18.49 | $9,245.00 |
| | | 10/1/2007 | Sell | -3,983 | $18.50 | $73,685.50 |
| | | 10/1/2007 | Sell | -4,707 | $18.51 | $87,126.57 |
| | | 10/1/2007 | Sell | -5,450 | $18.52 | $100,934.00 |
| | | 10/1/2007 | Sell | -10,638 | $18.53 | $197,122.14 |
| | | 10/1/2007 | Sell | -1,100 | $18.54 | $20,394.00 |
| | | 10/1/2007 | Sell | -400 | $18.55 | $7,420.00 |
| | | 10/1/2007 | Sell | -1,144 | $18.56 | $21,232.64 |
| | | 10/1/2007 | Sell | -100 | $18.57 | $1,857.00 |
| | | 10/1/2007 | Sell | -202 | $18.58 | $3,753.16 |
| | | 10/1/2007 | Sell | -800 | $18.59 | $14,872.00 |
| | | 10/1/2007 | Sell | -500 | $18.60 | $9,300.00 |
| | | 10/1/2007 | Sell | -400 | $18.61 | $7,444.00 |
| | | 10/1/2007 | Sell | -200 | $18.62 | $3,724.00 |
| | | 10/1/2007 | Sell | -8,625 | $18.63 | $160,683.75 |
| | | 10/1/2007 | Sell | -5,500 | $18.64 | $102,520.00 |
| | | 10/1/2007 | Sell | -3,680 | $18.65 | $68,632.00 |
| | | 10/1/2007 | Sell | -100 | $18.66 | $1,866.00 |
| | | 10/1/2007 | Sell | -25,582 | $18.66 | $477,360.12 |
| | | 10/1/2007 | Sell | -100 | $18.67 | $1,867.00 |
| | | 10/1/2007 | Sell | -3,486 | $18.67 | $65,083.62 |
| | | 10/1/2007 | Sell | -563 | $18.68 | $10,516.84 |
| | | 10/1/2007 | Sell | -1,000 | $18.69 | $18,690.00 |

| Name | Title | Date | Transaction | # of Shares | Price | Total |
|------|-------|------|-------------|-------------|-------|-------|
| | | 10/1/2007 | Sell | -5,500 | $18.69 | $102,795.00 |
| | | 10/1/2007 | Sell | -10,809 | $18.70 | $202,128.30 |
| | | 10/1/2007 | Sell | -6,984 | $18.71 | $130,670.64 |
| | | 10/1/2007 | Sell | -700 | $18.72 | $13,104.00 |
| | | 10/1/2007 | Sell | -5,001 | $18.72 | $93,618.72 |
| | | 10/1/2007 | Sell | -6,011 | $18.73 | $112,586.03 |
| | | 10/1/2007 | Sell | -3,766 | $18.74 | $70,574.84 |
| | | 10/1/2007 | Sell | -24 | $18.75 | $450.00 |
| | | 10/1/2007 | Sell | -13,255 | $18.75 | $248,531.25 |
| | | 10/1/2007 | Sell | -200 | $18.76 | $3,752.00 |
| | | 10/1/2007 | Sell | -2,637 | $18.76 | $49,470.12 |
| | | 10/1/2007 | Sell | -100 | $18.77 | $1,877.00 |
| | | 10/1/2007 | Sell | -6,816 | $18.77 | $127,936.32 |
| | | 10/1/2007 | Sell | -2,896 | $18.78 | $54,386.88 |
| | | 10/1/2007 | Sell | -7,488 | $18.79 | $140,699.52 |
| | | 10/1/2007 | Sell | -8,553 | $18.80 | $160,796.40 |
| | | 10/1/2007 | Sell | -1,000 | $18.81 | $18,810.00 |
| | | 10/1/2007 | Sell | -6,746 | $18.81 | $126,892.26 |
| | | 10/1/2007 | Sell | -1,672 | $18.82 | $31,467.04 |
| | | 10/1/2007 | Sell | -4,528 | $18.83 | $85,262.24 |
| | | 10/1/2007 | Sell | -200 | $18.84 | $3,768.00 |
| | | 10/1/2007 | Sell | -700 | $18.84 | $13,188.00 |
| | | 10/1/2007 | Sell | -700 | $18.85 | $13,195.00 |
| | | 10/1/2007 | Sell | -800 | $18.85 | $15,080.00 |
| | | 10/1/2007 | Sell | -200 | $18.89 | $3,778.00 |
| | | 10/1/2007 | Sell | -511 | $18.90 | $9,657.90 |
| | | 10/1/2007 | Sell | -700 | $18.94 | $13,258.00 |
| | | 10/1/2007 | Sell | -3,596 | $18.95 | $68,144.20 |
| | | 10/1/2007 | Sell | -500 | $18.96 | $9,480.00 |
| | | 10/1/2007 | Sell | -302 | $18.97 | $5,728.94 |
| | | 10/1/2007 | Sell | -400 | $18.98 | $7,592.00 |
| | | 10/1/2007 | Sell | -405 | $18.99 | $7,690.95 |
| | | 10/1/2007 | Sell | -4,700 | $19.00 | $89,300.00 |
| | | 10/1/2007 | Sell | -11,005 | $19.01 | $209,205.05 |
| | | 10/1/2007 | Sell | -1,900 | $19.02 | $36,138.00 |
| | | 10/1/2007 | Sell | -2,756 | $19.03 | $52,446.68 |
| | | 10/1/2007 | Sell | -4,228 | $19.04 | $80,501.12 |
| | | 10/1/2007 | Sell | -100 | $19.05 | $1,905.00 |
| | | 10/1/2007 | Sell | -244 | $19.05 | $4,648.20 |
| | | 10/1/2007 | Sell | -400 | $19.07 | $7,628.00 |
| | | 10/1/2007 | Sell | -400 | $19.08 | $7,632.00 |
| | | 10/1/2007 | Sell | -1,907 | $19.09 | $36,404.63 |
| | | 10/1/2007 | Sell | -300 | $19.10 | $5,730.00 |
| | | 10/1/2007 | Sell | -700 | $19.12 | $13,384.00 |
| | | 10/1/2007 | Sell | -3,300 | $19.13 | $63,129.00 |
| | | 10/1/2007 | Sell | -3,207 | $19.14 | $61,381.98 |
| | | 10/1/2007 | Sell | -600 | $19.15 | $11,490.00 |

| Name | Title | Date | Transaction | # of Shares | Price | Total |
|------|-------|------|-------------|-------------|-------|-------|
| | | 10/1/2007 | Sell | -500 | $19.18 | $9,590.00 |
| | | 10/1/2007 | Sell | -400 | $19.19 | $7,676.00 |
| | | | | -700,000 | | $12,255,497.72 |
| | | | | | | |
| Mitchell A. Saltz | Director | 6/15/2007 | Sell | -5,000 | $16.00 | $80,000.00 |
| | | 6/15/2007 | Sell | -10,000 | $15.97 | $159,700.00 |
| | | 6/15/2007 | Sell | -25,000 | $15.95 | $398,750.00 |
| | | 6/15/2007 | Sell | -40,000 | $15.90 | $636,000.00 |
| | | 6/15/2007 | Sell | -15,000 | $15.89 | $238,350.00 |
| | | 6/15/2007 | Sell | -15,000 | $15.88 | $238,200.00 |
| | | 6/15/2007 | Sell | -10,000 | $15.87 | $158,700.00 |
| | | 6/15/2007 | Sell | -80,000 | $15.85 | $1,268,000.00 |
| | | 7/12/2007 | Sell | -40,000 | $17.66 | $706,400.00 |
| | | 7/12/2007 | Sell | -60,000 | $17.90 | $1,074,000.00 |
| | | 7/12/2007 | Sell | -25,000 | $18.29 | $457,250.00 |
| | | 7/12/2007 | Sell | -50,000 | $18.36 | $918,000.00 |
| | | 7/12/2007 | Sell | -50,000 | $18.53 | $926,500.00 |
| | | 7/12/2007 | Sell | -12,000 | $18.55 | $222,600.00 |
| | | 7/13/2007 | Sell | -8,000 | $17.80 | $142,400.00 |
| | | 7/13/2007 | Sell | -5,000 | $18.00 | $90,000.00 |
| | | 9/28/2007 | Sell | -20,000 | $19.25 | $385,000.00 |
| | | 9/28/2007 | Sell | -35,000 | $19.51 | $682,850.00 |
| | | 9/28/2007 | Sell | -25,000 | $19.53 | $488,250.00 |
| | | 9/28/2007 | Sell | -25,000 | $19.54 | $488,500.00 |
| | | 10/1/2007 | Sell | -30,100 | $18.50 | $556,850.00 |
| | | 10/1/2007 | Sell | -5,900 | $18.51 | $109,209.00 |
| | | 10/1/2007 | Sell | -4,000 | $18.54 | $74,160.00 |
| | | 10/1/2007 | Sell | -7,000 | $18.58 | $130,060.00 |
| | | 10/1/2007 | Sell | -2,500 | $18.61 | $46,525.00 |
| | | 10/1/2007 | Sell | -2,500 | $18.62 | $46,550.00 |
| | | 10/1/2007 | Sell | -3,000 | $18.63 | $55,890.00 |
| | | 10/1/2007 | Sell | -3,000 | $18.65 | $55,950.00 |
| | | 10/1/2007 | Sell | -5,000 | $18.67 | $93,350.00 |
| | | 10/1/2007 | Sell | -4,500 | $18.68 | $84,060.00 |
| | | 10/1/2007 | Sell | -2,500 | $18.69 | $46,725.00 |
| | | 10/1/2007 | Sell | -5,000 | $18.70 | $93,500.00 |
| | | 10/1/2007 | Sell | -7,000 | $18.73 | $131,110.00 |
| | | 10/1/2007 | Sell | -4,500 | $18.74 | $84,330.00 |
| | | 10/1/2007 | Sell | -3,000 | $18.75 | $56,250.00 |
| | | 10/1/2007 | Sell | -5,500 | $18.76 | $103,180.00 |
| | | 10/1/2007 | Sell | -5,000 | $18.77 | $93,850.00 |
| | | 10/1/2007 | Sell | -10,000 | $18.79 | $187,900.00 |
| | | 10/1/2007 | Sell | -2,500 | $18.80 | $47,000.00 |
| | | 10/1/2007 | Sell | -7,500 | $18.83 | $141,225.00 |
| | | 10/1/2007 | Sell | -6,000 | $19.00 | $114,000.00 |
| | | 10/1/2007 | Sell | -5,500 | $19.01 | $104,555.00 |
| | | 10/1/2007 | Sell | -4,000 | $19.02 | $76,080.00 |

| Name | Title | Date | Transaction | # of Shares | Price | Total |
|------|-------|------|-------------|-------------|-------|-------|
| | | 10/1/2007 | Sell | -4,500 | $19.03 | $85,635.00 |
| | | 10/1/2007 | Sell | -1,500 | $19.10 | $28,650.00 |
| | | 10/1/2007 | Sell | -3,500 | $19.11 | $66,885.00 |
| | | | | -700,000 | | $12,472,929.00 |
| | | | | | | |
| Michael F. Golden | President & Chief Executive Officer | 11/12/2007 | Gift | 160,000 | $0.00 | $0.00 |
| | | 6/26/2007 | Sell | -4,200 | $16.36 | $68,712.00 |
| | | 6/26/2007 | Sell | -400 | $16.37 | $6,548.00 |
| | | 6/26/2007 | Sell | -2,800 | $16.38 | $45,864.00 |
| | | 6/26/2007 | Sell | -1,000 | $16.39 | $16,390.00 |
| | | 6/26/2007 | Sell | -200 | $16.40 | $3,280.00 |
| | | 6/26/2007 | Sell | -3,400 | $16.41 | $55,794.00 |
| | | | | 148,000 | | $196,588.00 |
| | | | | | | |
| John A. Kelly | Chief Financial Officer & Treasurer | 6/26/2007 | Sell | -663 | $16.30 | $10,806.90 |
| | | 6/26/2007 | Sell | -100 | $16.29 | $1,629.00 |
| | | 6/26/2007 | Sell | -300 | $16.28 | $4,884.00 |
| | | 6/26/2007 | Sell | -1,871 | $16.27 | $30,441.17 |
| | | | | -2,934 | | $47,761.07 |
| | | | | | | |
| Kenneth W. Chandler | Vice President-Operations | 7/13/2007 | Buy | 32,000 | $4.93 | -$157,760.00 |
| | | 8/7/2007 | Buy | 4,934 | $1.55 | -$7,647.70 |
| | | 8/7/2007 | Buy | 1,313 | $4.46 | -$5,855.98 |
| | | 8/7/2007 | Buy | 5,202 | $4.93 | -$25,645.86 |
| | | 8/8/2007 | Buy | 13,066 | $1.55 | -$20,252.30 |
| | | 8/8/2007 | Buy | 6,687 | $4.46 | -$29,824.02 |
| | | 8/8/2007 | Buy | 3,798 | $4.93 | -$18,724.14 |
| | | 6/26/2007 | Sell | -2,834 | $16.40 | $46,477.60 |
| | | 6/26/2007 | Sell | -100 | $16.41 | $1,641.00 |
| | | 7/13/2007 | Sell | -32,000 | $18.13 | $580,160.00 |
| | | 8/7/2007 | Sell | -11,449 | $20.00 | $228,980.00 |
| | | 8/8/2007 | Sell | -23,551 | $20.00 | $471,020.00 |
| | | | | -2,934 | | $1,062,568.60 |
| | | | | | | |
| Ann B. Makkiya | Corporate Counsel & Secretary | 7/26/2007 | Buy | 8,333 | $1.43 | -$11,916.19 |
| | | 7/26/2007 | Buy | 3,333 | $4.46 | -$14,865.18 |
| | | 6/28/2007 | Sell | -515 | $16.91 | $8,708.65 |
| | | 6/28/2007 | Sell | -400 | $16.93 | $6,772.00 |
| | | 6/28/2007 | Sell | -652 | $16.94 | $11,044.88 |
| | | 6/28/2007 | Sell | -200 | $16.95 | $3,390.00 |
| | | 6/28/2007 | Sell | -500 | $16.98 | $8,490.00 |
| | | 7/26/2007 | Sell | -11,666 | $17.51 | $204,271.66 |

| Name | Title | Date | Transaction | # of Shares | Price | Total |
|------|-------|------|-------------|-------------|-------|-------|
| | | | | -2,267 | | $215,895.82 |
| | | | | | | |
| | | | | | | |
| Leland A. Nichols | Vice President-Sales | 6/26/2007 | Sell | -5,667 | $16.38 | $92,825.46 |
| | | 6/26/2007 | Sell | -200 | $16.39 | $3,278.00 |
| | | | | -5,867 | | $96,103.46 |
| | | | | | | |
| | | | | | | |
| Thomas L. Taylor | Vice President-Marketing | 7/12/2007 | Buy | 31,666 | $1.43 | -$45,282.38 |
| | | 7/12/2007 | Buy | 8,300 | $4.46 | -$37,018.00 |
| | | 8/7/2007 | Buy | 8,300 | $4.46 | -$37,018.00 |
| | | 8/9/2007 | Buy | 33,334 | $1.43 | -$47,667.62 |
| | | 6/26/2007 | Sell | -100 | $16.28 | $1,628.00 |
| | | 6/26/2007 | Sell | -500 | $16.27 | $8,135.00 |
| | | 6/26/2007 | Sell | -2,334 | $16.26 | $37,950.84 |
| | | 7/12/2007 | Sell | -600 | $18.08 | $10,848.00 |
| | | 7/12/2007 | Sell | -900 | $18.07 | $16,263.00 |
| | | 7/12/2007 | Sell | -600 | $18.06 | $10,836.00 |
| | | 7/12/2007 | Sell | -5,200 | $18.05 | $93,860.00 |
| | | 7/12/2007 | Sell | -6,100 | $18.04 | $110,044.00 |
| | | 7/12/2007 | Sell | -8,600 | $18.03 | $155,058.00 |
| | | 7/12/2007 | Sell | -200 | $18.01 | $3,602.00 |
| | | 7/12/2007 | Sell | -17,766 | $18.00 | $319,788.00 |
| | | 8/7/2007 | Sell | -8,300 | $20.00 | $166,000.00 |
| | | 8/9/2007 | Sell | -30,234 | $22.00 | $665,148.00 |
| | | 8/9/2007 | Sell | -2,600 | $22.01 | $57,226.00 |
| | | 8/9/2007 | Sell | -400 | $22.03 | $8,812.00 |
| | | 8/9/2007 | Sell | -100 | $22.05 | $2,205.00 |
| | | | | -2,934 | | $1,500,417.84 |
| | | | | | | |
| | | | Totals: | -1,568,936 | | $33,707,965.05 |

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## UNDER THE FRAUD-ON-THE-MARKET DOCTRINE

62.     At all relevant times, the market for SWHC securities was efficient for the

following reasons, among others:

a.      SWHC's stock met the requirements for listing, and was listed and

actively traded on the NASDAQ, a highly efficient and automated market;

b.      As a regulated issuer, SWHC filed periodic public reports with the SEC;

and

c.     SWHC regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

63.     As a result of the foregoing, the market for SWHC's securities promptly digested current information regarding SWHC from all publicly available sources and reflected such information in SWHC's stock price.   Under these circumstances, all purchasers of SWHC securities during the Class Period suffered similar injury through their purchase of SWHC securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

64.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of SWHC who knew that those statements were false when                                                                                             made.

## COUNT ONE

### Violation of Section 10(b) of The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

65.    Plaintiff incorporates by reference paragraphs 1 though 63 above as if set forth herein.

66.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (ii) cause plaintiff and other members of the Class to purchase SWHC securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

67.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for SWHC securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

68.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of SWHC as specified herein.

69.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SWHC value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary to make the statements made about SWHC and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of SWHC securities during the Class Period.

70.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

71.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SWHC operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

72.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SWHC securities was artificially inflated during the Class Period.  In ignorance of the fact that the market prices of SWHC publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired SWHC securities during the Class Period at artificially high prices and were damaged thereby.

73.     At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the other members of the Class and the marketplace known the truth regarding the true financial position and operating conditions that SWHC was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise

acquired their SWHC securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

74.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

75.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT TWO

### Violation of Section 20(a) of The Exchange Act
### Against Defendants Golden and Kelly

76.     Plaintiff incorporates by reference paragraphs 1 though 74 above as if set forth herein.

77.     The Individual Defendants acted as controlling persons of SWHC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in or awareness of the Company's operations or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.

78.     The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

80.     As set forth above, SWHC and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, defendants Golden and Kelly are liable pursuant to Section 20(a) of the Exchange Act.

81.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as Class Representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(a), plaintiff hereby demands a trial by jury of all issues so triable.

Dated: January 7, 2008.

**SHAPIRO HABER & URMY LLP**

/s/ Thomas G. Shapiro
Thomas G. Shapiro (BBO # 454680)
Adam M. Stewart (BBO # 661090)
53 State Street
Boston, Massachusetts 02109
Tel:    617-439-3939
Fax:    617-439-0134

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
Gregory Mark Nespole
Martin E. Restituyo
270 Madison Avenue
New York, NY 10016
Tel:    212-545-4600
Fax:    212-686-0114

LAW OFFICES OF MARC HENZEL
MARC S. HENZEL
273 Montgomery Avenue, Suite 202
Bala Cynwyd, PA 19004
Tel:    610/660-8000
Fax:    610/660-8080